UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Frank W. Highley,

        Plaintiff,

        v.

BAART Clinic and
Dr. Genevieve Kelly,

        Defendants.

Case No. 2:23–cv–569

## REPORT AND RECOMMENDATION
(Docs. 20, 22)

Frank W. Highley, a self-represented prisoner currently incarcerated at Southern State Correctional Facility (SSCF), brings this action against BAART Clinic and Dr. Genevieve Kelly alleging medical malpractice and a violation of the Eighth Amendment arising out of allegedly inadequate treatment related to his Medication-Assisted Treatment (MAT) at SSCF. He seeks $1 million in punitive damages for "mental anguish, cruel and unusual punishment, deliberate indifference, negligen[ce], [and] malpractice." (Doc. 4 at 5.)

Plaintiff initially filed the Complaint in the Superior Court seeking review of government action under Vermont Rule of Civil Procedure 75.[1] (Doc. 4.) On October 25, 2023, Plaintiff filed a Motion for Default Judgment in Superior Court. (Doc. 20.) Defendants removed the matter to this Court on October 27, 2023, and filed a Motion to Dismiss the Complaint on

---

[1] In conducting a preliminary assessment of Plaintiff's Petition, the Superior Court determined that the Petition was not a Rule 75 action but rather a "[r]egular [c]ivil [c]laim" because it primarily sought monetary damages against the defendants "under a theory of medical malpractice." (Doc. 7.)

November 3, 2023.  (Doc. 22.)  As of the date of this Report and Recommendation, Plaintiff has not filed a response to Defendants' Motion to Dismiss.[2]

For the reasons explained below, I recommend that Plaintiff's Motion for Default Judgment (Doc. 20) be denied and that Defendants' Motion to Dismiss (Doc. 22) be granted.

## Background

The Court draws the following facts from the Complaint and accepts them as true for purposes of resolving Defendants' Motion to Dismiss.  As initially filed in the Superior Court, Plaintiff's Complaint appeared to request review of the Department of Corrections' actions related to Plaintiff's methadone program while in custody.  (Doc. 4 at 2–5.)  Plaintiff alleges that "on or about [November 20, 2021], [he] was on an upward tap[]er of methadone," but was continuing to experience "symptoms of 'detox.'"  (*Id.* at 3.)  He further alleges that he "kept requesting an increase" from Dr. Kelly at the BAART Clinic in Newport, but Dr. Kelly denied Plaintiff an increase in methadone.  (*Id.*)  Plaintiff states that he received "numerous pre-dose assessments by the nursing staff" at the correctional facility, and that the nursing staff is "run[] by Vita-Core."  (*Id.*)

After his transfer to Northwest State Correctional Facility on March 6, 2023, he spoke with "Matt" and "Lisa," who apparently were on the nursing staff at the facility.  According to Plaintiff, "she" indicated that a month of pre-dose assessments should be done before any increase in medication.  (*Id.* at 4.)  Plaintiff alleges that he has "endured 2 EKGs and . . . 10 pre-dose assessments."  (*Id.*)  Plaintiff alleges that "[i]t's . . . going on a year ½ now" and that he is "mentally ill with numerous ailments" and takes "medications for depression, anxiety, ADHD,

---

[2]  The Motion to Dismiss contains a Certificate of Service in which defense counsel attests that the Motion was "forwarded to *pro se* plaintiff" on November 3, 2023.  (Doc. 22 at 2.)  The Court has no information indicating that service of the Motion to Dismiss was unsuccessful.

PTSD, [and] explosive anger disorder." (*Id.*) Plaintiff asserts that he is "working on [his] high school diploma but because of th[ese] detox symptoms" he does not sleep, hardly eats, and is "always angry." (*Id.*) He further states that he has degenerative disk disease and carpal tunnel in both wrists. (*Id.*) Plaintiff asserts that Dr. Kelly has declined to increase his medication without justification, and that he continues to experience detoxification symptoms, resulting in cruel and unusual punishment in violation of the Eighth Amendment. (*Id.*)

<u>Discussion</u>

## I.   Subject Matter Jurisdiction After Removal of the Complaint from Superior Court

Defendants acknowledge that Plaintiff's Complaint does not explicitly reference 42 U.S.C. § 1983 as the basis for the Court's subject matter jurisdiction, but they assert that jurisdiction is nevertheless proper because the Complaint is a civil action for money damages alleging "deliberate indifference" by Defendants in violation of the Eighth Amendment. (Doc. 22-1 at 2.) Although Plaintiff has not objected to removal of this action to federal court, "district courts have an independent obligation to address subject-matter jurisdiction," *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004) (internal quotation marks omitted), and therefore the Court briefly addresses the issue.

The federal removal statute provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Therefore, a civil action may only be removed to federal court if it "could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005). "The district courts shall have original jurisdiction of all civil actions arising

3

under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[F]ederal courts construe the removal statute narrowly, resolving any doubts against removability." *Platinum-Montaur Life Sciences, LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (internal quotation marks omitted). This is because removal jurisdiction "implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum." *Zerafa v. Montefiore Hosp. Hous. Co.*, 403 F. Supp. 2d 320, 324 (S.D.N.Y. 2005). Accordingly, the "party seeking removal bears the burden of showing that federal jurisdiction is proper." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011). "A case is removable when the initial pleading enables the defendant to intelligently ascertain removability from the face of such pleading . . . ." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir. 2001) (internal quotation marks omitted). "A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support the removal petition." *Id.* (internal quotation marks omitted).

Although Plaintiff initially filed this action in Superior Court seeking review of governmental action under Vermont Rule of Civil Procedure 75, it is clear from the substance of the allegations that he is seeking monetary damages against Defendants for injuries allegedly resulting from their "medical malpractice," "deliberate indifference" in violation of the Eighth Amendment, and "cruel and unusual punishment." (Doc. 4 at 1, 4, 5.) Applying the required liberal construction to this pro se complaint, a prisoner in the custody of the Vermont Department of Corrections seeking money damages against facility medical providers for deliberate indifference in violation of the Eighth Amendment is asserting a claim under 42 U.S.C. § 1983. Such a claim arises under the Constitution and laws of the United States and therefore this Court may exercise jurisdiction under 28 U.S.C. § 1331.

## II.    Plaintiff's Motion for Default Judgment

Plaintiff filed a Petition for Default Judgment in the Superior Court, and the Petition was docketed on October 25, 2023.  (Doc. 20.)  He alleged in the Petition that he had filed his Rule 75 Petition "over two months ago" and that Defendants had not increased his methadone since the filing of the Petition.  (*Id.* at 1–2.)  He does not state that Defendants had failed to file a responsive pleading in court.  I recommend that the Court deny Plaintiff's Motion for Default Judgment because (1) Plaintiff has not complied with the default judgment procedure specified in Federal Rule of Civil Procedure 55 and Local Rule 55; and (2) even if Plaintiff had complied with Rule 55, Defendants appeared in this action and their Motion to Dismiss was timely filed.

Rule 55 permits a plaintiff to obtain a default judgment against a defendant who has failed to plead or otherwise defend against a lawsuit.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).  The Rules specify a two-step procedure.  The first step is to seek a clerk's entry of default.  Fed. R. Civ. P. 55(a); L.R. 55(a) (a party seeking default judgment under Rule 55(b) "must first obtain a clerk's entry of default under Rule 55(a)"); *see also Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011) ("The first step is to obtain an entry of default.")  After entry of default, a plaintiff must then adhere to the requirements of Rule 55(b) to obtain a default judgment.  *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 34 (2d Cir. 2012).

Plaintiff has not obtained the required clerk's entry of default before seeking a default judgment.  The docket does not reflect that Plaintiff requested an entry of default under Rule 55(a).  Plaintiff also has not included with his filing a copy of the clerk's entry of default under Local Rule 55(c).  *See Drapeau v. SEI Invs. Distrib. Co.*, Case No. 5:18-cv-119, 2019 WL 2289279, at *3 (D. Vt. Mar. 12, 2019).  Therefore, default judgment is not appropriate.

In addition, Defendants appeared in this action and their Motion to Dismiss was timely filed. "A defendant who did not answer before removal must answer or present other defenses or objections . . . within the longest of . . . 21 days after receiving . . . a copy of the initial pleading stating the claim for relief; . . . 21 days after being served with the summons for an initial pleading on file at the time of service; or . . . 7 days after the notice of removal is filed." Fed. R. Civ. P. 81(c)(2)(A)–(C). The returns of service indicate that the summonses were served on the BAART Clinic and Dr. Kelly on September 25, 2023. (Docs. 14, 15.) Even assuming, as Defendants assert, that they received only the summonses on September 25, but independently obtained the Complaint on September 29, (Doc. 21-1 at 2), the Motion to Dismiss was not filed within the prescribed 21-day period under Rule 81. However, the Motion to Dismiss was filed on November 3, 2023, which was seven days after the notice of removal was filed. (Doc. 1 (notice of removal filed in this Court on October 27, 2023, rendering the November 3, 2023 filing of the Motion to Dismiss timely).) Defendants appeared in this action and timely filed their Motion to Dismiss.

I recommend that the Court deny Plaintiff's Motion for Default Judgment.

### III.    Plaintiff's Failure to Respond to Defendants' Motion to Dismiss

As noted, Defendants filed their Motion to Dismiss on November 3, 2023. (Doc. 22.) Plaintiff has not filed a response. Nevertheless, a court may not grant a motion to dismiss based solely on a plaintiff's lack of response to the motion. *See McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000) ("[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to

respond to a Rule 12(b)(6) motion does not warrant dismissal"); *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010) ("Because a motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits"); *DJ's Tree Serv. & Logging, Inc. v. Bandit Indus., Inc.*, 557 F. Supp. 3d 511, 519 n.1 (D. Vt. 2021) ("Plaintiff has not filed an opposition to Defendant Bandit's motion to dismiss, however, 'the lack of opposition does not, without more, justify dismissal.'" (quoting *James v. John Jay Coll. of Crim. Just.*, 776 F. App'x 723, 724 (2d Cir. 2019) (summary order))).

Accordingly, the Court has considered the legal sufficiency of Plaintiff's Complaint and recommends dismissal for failure to state a claim as to both Dr. Kelly and the BAART Clinic.

### Standard of Review

The court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). The court must review a pro se complaint with "special solicitude," construing it to raise the strongest arguments it suggests. *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (internal quotation marks omitted). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above

7

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must

allege sufficient facts to show "more than a sheer possibility that a defendant has acted

unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the

line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at

570.

In assessing the adequacy of the pleadings, a court must accept all factual assertions as

true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch &*

*Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 98 (2d Cir. 2007). A complaint is properly dismissed where, as a matter of law, "the

allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*,

550 U.S. at 558. Conversely, this presumption of truth "is inapplicable to legal conclusions,"

and therefore the court need not credit "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v.*

*Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept

conclusory allegations or legal conclusions masquerading as factual conclusions." (internal

quotation marks omitted)).

## I.    Claims Under 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under

color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"

*Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alteration and omissions in original) (quoting 42 U.S.C.

§ 1983). Section 1983 does not itself establish federally protected rights; it "provides a method

for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

(internal quotation marks omitted); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt*, 504 U.S. at 161. To state a claim under § 1983, a plaintiff must: (1) "allege the violation of a right secured by the Constitution and laws of the United States," and (2) show that "the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Courts consider an incarcerated prisoner's claim of constitutionally inadequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). When a pretrial detainee brings such a claim, the analysis is conducted under the Fourteenth Amendment Due Process Clause. *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017). Plaintiff has not stated whether he is a pretrial detainee or a convicted prisoner serving a sentence. Based on the allegations in the Complaint and the procedural history of the case, however, the Court concludes that Plaintiff is a convicted prisoner and therefore analyzes his claims under the Eighth Amendment. (*See* Doc. 4 at 2–3 ("Petitioner is an inmate currently committed to the care and custody of the Vermont Department of Corrections"); Doc. 4 at 5 ("I've been in now 10 y[ears]").)[3]

**A.    Plaintiff's claims for relief under 42 U.S.C. § 1983 should be dismissed.**

Plaintiff's Eighth Amendment claim against Dr. Kelly should be dismissed because he has not alleged a sufficiently serious medical condition and he has not adequately alleged that Dr. Kelly was deliberately indifferent to his serious medical needs.

---

[3]  The Vermont Supreme Court affirmed Plaintiff's conviction and sentence as a habitual offender, which further confirms that Plaintiff is a convicted prisoner whose claims arise under the Eighth Amendment. *State v. Highley*, No. 2014-220, 2015 WL 3756892 (2015).

1.    **Plaintiff's allegations are insufficient to state an Eighth Amendment claim against Dr. Kelly.[4]**

"The Eighth Amendment, which applies to the states under the Due Process Clause of the Fourteenth Amendment, guarantees freedom from cruel and unusual punishment." *Jones v. Westchester Cnty. Dep't of Corrs. Med. Dep't*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008). The Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law," as "not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The failure to adequately treat a prisoner's medical condition may constitute cruel and unusual punishment in violation of the Eighth Amendment only where a defendant acts with "deliberate indifference to [the prisoner's] serious medical needs." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Estelle*, 429 U.S. at 104). A claim for deliberate indifference has both objective and subjective elements. *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991).

a.    **Objective Element of an Eighth Amendment Claim: "Sufficiently Serious" Medical Condition**

To establish the first element of an Eighth Amendment claim, the alleged medical condition or deprivation of adequate medical care must be, "in objective terms, 'sufficiently serious.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Where inadequate medical care is alleged, the determination of whether this objective element is met involves two inquiries "tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185. The court must determine (1) "whether the prisoner was actually deprived of adequate medical care," and (2) "whether the

---

[4] As Defendants note, a physician contracted to provide medical care to inmates acts under color of state law when treating an incarcerated individual. *West v. Atkins*, 487 U.S. 42, 57 (1988). For purposes of the § 1983 analysis in its Motion to Dismiss, Dr. Kelly does not dispute that she was acting under color of state law at the time of the alleged conduct. (Doc. 22-1 at 7.)

inadequacy in medical care [wa]s sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279, 280 (2d Cir. 2006). Inadequate medical care in the prison setting is "sufficiently serious" if it "creat[es] a risk of death, degeneration, or extreme pain." *Cole v. Fischer*, 416 F. App'x 111, 113 (2d Cir. 2011) (internal quotation marks omitted); *see Chance*, 143 F.3d at 702 (serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" (internal quotation marks omitted)); *Wilson*, 501 U.S. at 298 ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." (citation and internal quotation marks omitted)).

Thus, "a prisoner with a hang-nail has no constitutional right to treatment, but if prison officials deliberately ignore an infected gash, 'the failure to provide appropriate treatment might well violate the Eighth Amendment.'" *Harrison*, 219 F.3d at 137 (quoting *Chance*, 143 F.3d at 702. In determining whether a sufficiently serious medical condition exists, the Second Circuit has identified several factors for courts to consider, including "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (alteration in original) (internal quotation marks omitted). "[I]f the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay . . . in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotation marks omitted). The court may "consider the absence of concrete medical injury as one of the relevant factors in

determining whether the asserted deprivation of medical care was sufficiently serious to establish a claim under the Eighth Amendment." *Smith*, 316 F.3d at 189.

Courts in this circuit have "held that, in general, a failure to treat withdrawal symptoms that are of relatively short duration does not constitute a [constitutional] violation." *Bain v. Cotton*, Civil Action No. 2:06-CV-217, 2010 WL 2756989, at *7 (D. Vt. June 10, 2010) (finding plaintiff's allegations that he suffered "symptoms of detoxification for several weeks" inadequate to defeat a motion for summary judgment); *see Avallone v. Hofman*, Nos. 2:06-CV-253, 2:07-CV-1, 2009 WL 2957955, at *5 (D. Vt. Sept. 9, 2009) (finding that symptoms including seizure, vomiting, diarrhea, and dehydration for a period of two days "do not generally provide the basis for an Eighth Amendment claim"); *Munger v. Cahill*, No. 9:16-CV-728 (BKS/CFH), 2018 WL 4635709, at *10 (N.D.N.Y. July 23, 2018) (concluding "that withdrawal symptoms such as sweating, chills, fever, diarrhea, and vomiting are not sufficiently serious for the purpose of an Eighth Amendment analysis"); *Smith v. Rutigliano*, No. 06-CV-6320 CJS, 2008 WL 5111314, at *1, *4 (W.D.N.Y. Dec. 3, 2008) (concluding that withdrawal symptoms including night sweats, chills, headaches and an upset stomach were not sufficiently serious to support a claim of medical deliberate indifference); *McNamara v. Lantz*, Civil No. 3:06-CV-93 (PCD), 2008 WL 4277790, at *14 (D. Conn. Sept. 16, 2008) (granting summary judgment for defendants where plaintiff suffered "substantial and chronic pain and discomfort" while experiencing withdrawal (internal quotation marks omitted)).

Other district courts have held that withdrawal symptoms are sufficiently serious medical conditions for purposes of the objective element of the analysis. *See, e.g.*, *P.G. v. Jefferson County, New York*, 5:21-CV-388, 2021 WL 4059409, at *2, *4 (N.D.N.Y. Sept. 7, 2021) (finding plaintiff "is substantially likely to succeed on the merits of [his] claim" where he experienced

12

"pain throughout [his] body, nausea, vomiting, diarrhea, anxiety, and sleeplessness" (second alteration in original)); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622 (KMK), 2018 WL 1626348, at *13 (S.D.N.Y. Mar. 29, 2018) ("Courts have held that drug or alcohol withdrawal alone constitutes a serious medical condition."); *Campa v. Yellowstone Cnty. Det. Facility Turnkey Nurse Staff*, Cause No. CV 22-86-BLG-SPW, 2023 WL 3305127, at *3 (D. Mont. May 8, 2023) ("The Court will presume for purposes of this order that treatment for opioid withdrawal constitutes an objectively serious medical need."); *Joseph v. Son*, No. 2:22-cv-01558-CKD P, 2023 WL 2480591, at *2 (E.D. Cal. Mar. 13, 2023) ("Drug withdrawal constitutes a serious medical need requiring appropriate medical care under the Eighth Amendment."); *Brawner v. Scott County, Tennessee*, 14 F.4th 585, 598 (6th Cir. 2021) (finding that reasonable jury could find Suboxone withdrawal was objectively serious medical need); *Tilson v. Humphrey*, Civil Action No. 5:19-cv-00033, 2021 WL 4443816, at *5 (W.D. Va. Sept. 27, 2021) (collecting cases) ("Several courts have found that symptoms of alcohol and drug withdrawal qualify as a serious medical need." (internal quotation marks omitted)).

Plaintiff alleges that in November 2021 his treatment plan involved an "upward tap[]er" of methadone to 165 mg to address symptoms of detoxification." (Doc. 4 at 3.) He asserts that his symptoms persisted even after reaching this dosage level. (*Id.*) He requested a dosage increase from Dr. Kelly, who allegedly denied the request after the completion of two EKGs and "at least 10 pre-dose assessments." (*Id.* at 3–4.) Plaintiff's allegations are insufficient to satisfy the objective component of a deliberate indifference claim because he has not alleged a deprivation of adequate medical care. To the contrary, his allegations demonstrate that medical staff have been conducting regular clinical assessments to determine appropriate methadone dosage levels. The allegations also do not establish that the allegedly inadequate medical care

was "sufficiently serious" such that it created a risk of "death, degeneration, or extreme pain."
*Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). Although Plaintiff describes various
health conditions from which he suffers, he has not alleged with any detail that inadequate
methadone levels are related to the symptoms associated with these conditions, including
degenerative disk disease and carpal tunnel in his wrists. Similarly, Plaintiff does not claim that
the alleged underdosing of methadone relates to the symptoms he experiences related to
depression, anxiety, ADHD, PTSD, and anger disorder. Even assuming that Plaintiff's sleep
loss, reduced appetite, and anger are consequences of inadequate methadone levels, he has not
alleged inadequate medical care that is sufficiently serious for constitutional purposes. However,
even assuming that Plaintiff has adequately alleged a deprivation of adequate medical care that is
"sufficiently serious," *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir.
2013), the allegations in the Complaint are insufficient as to the subjective element of an Eighth
Amendment claim.

> **b.    Subjective Element of an Eighth Amendment Claim: "Deliberate Indifference"**

"Subjectively, the official charged with deliberate indifference must have acted with the
requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. County of Nassau*,
459 F. App'x. 28, 29 (2d Cir. 2012) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.
1996)). Under this prong of the analysis, the plaintiff must prove that "[a] prison official knew
of and disregarded the plaintiff's serious medical needs." *Chance*, 143 F.3d at 703 (citing
*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *Beaman v. Unger*, 838 F. Supp. 2d 108, 110
(W.D.N.Y. 2011) ("To establish deliberate indifference, . . . [a] plaintiff must prove that the
defendants had a culpable state of mind and intended wantonly to inflict pain."). Deliberate
indifference occurs when an official "knows that [an] inmate[] face[s] a substantial risk of

serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[D]eliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions [undertaken] for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835.

Medical malpractice is insufficient to establish a constitutional violation. *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness . . . ."). As the Supreme Court explained, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019) ("A plaintiff must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context." (internal quotation marks omitted)).

Plaintiff's allegations are insufficient to satisfy the deliberate indifference element of an Eighth Amendment claim. Plaintiff essentially alleges that his current methadone dosage is insufficient to address his symptoms of detoxification. (Doc. 4 at 3.) The Complaint does not claim that Dr. Kelly was aware of Plaintiff's serious medical needs and simply disregarded them or otherwise did not take reasonable measures to treat his needs. *Cf. Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 217 (S.D.N.Y. 2014) (finding inmate allegations that jail medical personnel uniformly denied methadone over a several month period to affected population plausibly stated a claim for deliberate indifference). Rather, Plaintiff is receiving methadone, and he describes in the Complaint the clinical and diagnostic steps Dr. Kelly has taken in ultimately determining not to increase his methadone levels. Although he clearly disagrees with

Dr. Kelly's assessment, his disagreement is, at most, "merely a difference of opinion with respect to a course of treatment," which "is not actionable under section 1983." *Ruiz v. Homerighouse*, No. 01-CV-0266E(SR), 2003 WL 21382896, at *4 (W.D.N.Y. Feb. 13, 2003); *see Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("Allegations of mere negligence in the treatment of a prisoner's physical condition, or claims based on differences of opinion over matters of medical judgment, fail to rise to the level of a § 1983 violation."); *King v. Shinder*, No. 16-cv-06315 (PMH), 2020 WL 4750294, at *8 (S.D.N.Y. Aug. 17, 2020) ("A plaintiff's mere [d]isagreement over the proper treatment does not rise to the level of a constitutional violation." (alteration in original) (internal quotation marks omitted)).

It is well established in this Circuit that "mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703. As one district court has explained, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim[, as] [t]hese issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 203, 312 (S.D.N.Y. 2001).

As Plaintiff's allegations are insufficient to raise a plausible claim of deliberate indifference to his methadone treatment needs by Dr. Kelly, Plaintiff's Eighth Amendment claim as to Dr. Kelly should be dismissed.

**2.     The Eighth Amendment claim against BAART Clinic must be dismissed because Plaintiff has not alleged that a BAART Clinic policy or custom caused its employee to violate his constitutional rights.**

Generally, an employer is not liable for its employees' actions under the tort theory of respondeat superior in suits brought under § 1983. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Although this rule was initially established in the context of municipal employers, it has been extended to private employers as well. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990). Private employers are not liable for the constitutional torts of their employees "unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Id.* at 408 (omission in original) (quoting *Monell v. Dep't of Soc. Servs. of City of New York.*, 436 U.S. 658, 691 (1978)); *see also Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 790 n.2 (7th Cir. 2014) (collecting cases extending the *Monell* standard to private companies).

A plaintiff must allege that the defendant's actions were attributable to "(1) a formal policy officially endorsed by the [employer]; (2) actions taken by [those] responsible for establishing the [policy] that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the . . . employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010); *accord Dumel v. Westchester Cnty.*, No. 19-CV-2161 (KMK), 2021 WL 738365, at *4–7 (S.D.N.Y. Feb. 25, 2021).

Plaintiff's claim against the BAART Clinic should be dismissed because he has not alleged that a BAART Clinic policy or practice caused its employees to deprive him of a constitutional right.  He alleges only that he repeatedly requested an increase in his methadone dosage from Dr. Kelly of the BAART Clinic, and that the medication was not increased.  (Doc. 4 at 3.)  The Court cannot reasonably infer from this brief reference to the BAART Clinic that he did not receive the increased dosage due to a formal BAART Clinic policy.  Moreover, even assuming that Plaintiff received medically inappropriate treatment from Dr. Kelly while in custody, the BAART Clinic cannot be held liable under § 1983 for its employees' tortious actions if those actions were not performed pursuant to policy or custom.  *See Monell*, 436 U.S. at 691.

In addition, Plaintiff has not alleged that any other type of BAART Clinic policy, custom, or usage caused his injuries.  For example, he does not identify actions taken by any individuals with policymaking authority that caused the deprivation of his rights.  Nor has Plaintiff alleged "a practice so consistent and widespread" that it amounted to a custom or usage of which the BAART Clinic should have been aware.  *Brandon*, 705 F. Supp. 2d at 276–77; *see also Villafane v. Sposato*, CV 16-3674 (JFB) (AKT), 2017 WL 4179855, at *18 (E.D.N.Y. Aug. 22, 2017) (holding that plaintiff inmate did not allege medical care provider had a policy or custom when "complaint concern[ed] only allegedly unconstitutional conduct to which [plaintiff] was subjected" (internal quotation marks omitted)), *report and recommendation adopted*, 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017).  Finally, Plaintiff does not claim a deficiency in the BAART Clinic's training or supervision protocols "to such an extent that it amount[ed] to deliberate indifference" to his rights.  *Brandon*, 705 F. Supp. 2d at 277; *see Rivera v. Westchester Cnty.*, No. 18-CV-8354 (KMK), 2019 WL 3958425, at *5 (S.D.N.Y. Aug. 22, 2019) (finding failure-to-

train claim insufficient where plaintiff "cited no specific deficiency in . . . training or supervision protocols").

Because Plaintiff has not alleged that medical staff acted pursuant to policy or custom when allegedly engaging in conduct that deprived him of his constitutional rights, he has not stated a § 1983 claim against the BAART Clinic for violations of the Eighth Amendment. *See Arroyo v. City of Buffalo*, 15-CV-753A(F), 2017 WL 3085835, at *7 (W.D.N.Y. July 20, 2017), *report and recommendation adopted*, 2018 WL 488943 (W.D.N.Y. Jan. 20, 2018).

I therefore recommend that Plaintiff's § 1983 claims against the BAART Clinic be dismissed.

## II.    Supplemental Jurisdiction

In cases over which a district court has original jurisdiction, it shall also have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).  A court may decline to exercise supplemental jurisdiction over state-law claims, however, if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).  If the plaintiff "has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Because I recommend dismissal of Plaintiff's federal claims against Dr. Kelly and the BAART Clinic, I further recommend that the Court decline to exercise supplemental jurisdiction over the medical malpractice claim in Plaintiff's Complaint.

## III.    Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity to amend if, when read liberally, the complaint contains "any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks omitted). A district court may deny leave to amend when an amendment would be futile. *Hill*, 657 F.3d at 123. As it is not evident at this stage that an amendment would be futile, I recommend that the Court grant Plaintiff leave to amend his Complaint.

In the event Plaintiff chooses to file an amended complaint, he must include all factual allegations and claims against all defendants, as well as specify the relief he seeks. With respect to each claim against each defendant who committed an alleged wrongful act against him, Plaintiff must describe each defendant's specific involvement in the alleged constitutional deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). As any such amended complaint will replace the existing complaint, Plaintiff cannot rely upon or incorporate by reference any previously filed pleading or document. *See* Fed. R. Civ. P. 8(a); L.R. 15(b); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Finally, any amended complaint must comport with the Federal Rules of Civil Procedure, including setting forth short and plain statements of each claim as required by Rule 8, and doing so in numbered paragraphs as required by Rule 10.

## Conclusion

For the reasons stated above, I recommend that Plaintiff's Motion for Default Judgment (Doc. 20) be DENIED and that Defendants' Motion to Dismiss (Doc. 22) be GRANTED.  I further recommend that if this Report and Recommendation is adopted by the Court, Plaintiff be granted thirty days to file an amended complaint.  In the event an amended complaint is not filed within that timeframe, the case should be closed.

Dated at Burlington, in the District of Vermont, this 22nd day of July 2024.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision*."  Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).